■ WEIL, GOTSHAL & MANGES, LLP, Plaintiff, v FASHION BOUTIQUE OF SHORT HILLS, INC., et al., Defendants. FASHION BOUTIQUE OF SHORT HILLS, INC., Respondent-Appellant, v WEIL, GOTSHAL & MANGES, LLP, et al., Appellants-Respondents. [780 NYS2d 593]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered December 9, 2003, which denied counterclaim defendants Weil, Gotshal & Manges LLP, Helene D. Jaffee and Robert G. Sugarman's motion pursuant to CPLR 3211 (a) (1) and (7), to dismiss the first counterclaim for breach of fiduciary

duty and granted counterclaim defendants' motion to dismiss the second counterclaim for legal malpractice, unanimously reversed, on the law, without costs or disbursements, the motion to dismiss the first counterclaim granted and the motion to dismiss the second counterclaim denied.

This action for $2.7 million in unpaid legal fees arose out of the representation, commencing in 1993, of counterclaim plaintiff Fashion Boutique of Short Hills, Inc. and its principals by counterclaim defendant law firm and two of its partners (the law firm). Fashion Boutique alleges that, while representing it against Fendi USA, Inc. and Fendi Stores, Inc. (Fendi) in an action in federal court, Prada USA, which had acquired a controlling interest in Fendi in October 1999, retained the law firm. The federal action was based on alleged disparaging remarks by Fendi Stores, Inc., a competing Fifth Avenue boutique, and its parent Fendi USA, Inc., which led to the destruction of Fashion Boutique's retail business, thereby violating the Lanham Act (15 USC § 1125) and New York State law prohibiting product disparagement. The law firm represented Fashion Boutique through extensive pretrial discovery, a summary judgment motion resulting in the dismissal of the Lanham Act claim and a July 2000 jury trial, which resulted in the award of $35,000 in compensatory damages and $75,000 in punitive damages in favor of Fashion Boutique. Earlier, in March 2000, the Fendi defendants had made a settlement offer of $1.4 million, which, although recommended by the law firm, was rejected by Fashion Boutique. The law firm was granted leave to withdraw in September 2000. In December 2002, the United States Court of Appeals for the Second Circuit affirmed the dismissal of the Lanham Act claim.

The law firm thereafter commenced this action for unpaid legal fees; Fashion Boutique answered and asserted counterclaims for legal malpractice and breach of fiduciary duty, seeking $15,555,537 in damages, based on two principal allegations. It alleged that the two law firm partners "disregarded [their] fiduciary obligation and breached their duty of undivided loyalty to Fashion Boutique" by agreeing in late 1999 to represent Prada USA and thereby creating an "irresolvable conflict of interest." It also alleges that, as a result of this conflict, the law firm did not use adequately the testimony of a witness, Caroline Clarke, a former Fendi officer, who, it is claimed, could supply "critical elements" of proof relevant to the dismissed Lanham Act claim. According to Fashion Boutique, Ms. Clarke, in an October 6, 1999 e-mail, told one of the defendant law firm partners that she could testify about hundreds of incidents in

which Fendi employees made disparaging remarks about Fashion Boutique and that she knew of a "continued policy of disparagement" against Fashion Boutique. In a prior February 1994 deposition, Ms. Clarke denied personal knowledge of any Fendi policy to disparage the quality of Fashion Boutique merchandise. Notwithstanding, Fashion Boutique claimed that the law firm failed to appreciate the significance of the "new evidence" contained in the e-mail and to use Ms. Clarke's testimony more effectively to reinstate the Lanham Act claim and prove the remaining claims at trial. Fashion Boutique also alleged that the law firm failed to alert the trial judge to claimed threats against Ms. Clarke at the time of trial and that, because of its divided loyalty, in the face of these threats, the law firm, in effect, abandoned her as a witness; that after the dismissal of the Lanham Act claim, it improvidently advised Fashion Boutique to agree to a stipulated judgment and take an immediate appeal; and that it failed to conduct adequate cross-examination of Fendi witnesses and to submit certain financial records to the jury on the punitive damages issue.

The law firm moved, pursuant to CPLR 3211 (a) (1) and (7) to dismiss the counterclaims, arguing, inter alia, that no conflict of interest exists since the product disparagement action is completely unrelated to the trademark enforcement issues in certain "gray goods" litigation in which the law firm was advising Prada USA. The law firm also argued that, even if a conflict of interest case had been properly pleaded, Fashion Boutique cannot establish the element of loss causation. The motion court granted the motion in part and denied it in part, dismissing the second counterclaim for legal malpractice but sustaining the first counterclaim for breach of fiduciary duty. In so ruling, the motion court rejected the probative value of Clarke's October 1999 e-mail, the focal point of Fashion Boutique's counterclaims, finding, "Nothing in the E-mail would have altered the federal courts' conclusion, upon which dismissal of the Lanham Act claim was based, that Fendi's actions did not constitute 'advertising or promotion' within the meaning of the Lanham Act." Similarly, as to Fashion Boutique's common-law product disparagement claims, the motion court found that the documentary evidence "refutes Fashion Boutique's contention that, but for the counterclaim-defendants' failure to properly utilize Clarke as a witness, Fashion Boutique would have obtained a substantially greater award of damages on its claims under New York State law." The court also rejected the claim that "Clarke was unable to testify fully and freely at trial, because Fendi was subjecting her to an alleged campaign of threats and intimidation." The court noted that the federal trial court examined

Clarke at a hearing outside the jury's presence to consider the effect of the purported threats on her testimony, at the conclusion of which the court concluded: "I have listened to a very distraught woman who has addressed subjects which are irrelevant to this lawsuit." The motion court rejected each of the criticisms of the way in which the law firm conducted the trial, finding that they constitute "simply dissatisfaction with strategic choices." Despite this finding, the court sustained the breach of fiduciary duty counterclaim, holding that even if the law firm may not have had an actual conflict of interest it might not have been " 'sensitive . . . to forces that might operate upon [it] subtly in a manner likely to diminish the quality of [its] work' " (quoting *Estate of Re v Kornstein Veisz & Wexler*, 958 F Supp 907, 925 [1997]). The same documentary evidence that refuted legal malpractice, the court held, "does not utterly refute" the allegations that the law firm's "failure to make better use of Clarke's testimony, and delay in advising [the federal trial court] of the purported campaign of intimidation against Clarke until after she had already given her trial testimony, substantially contributed to the failure to achieve a better result in the Fendi action." We reverse.

Fashion Boutique's theory of liability, common to both the legal malpractice and breach of fiduciary duty counterclaims, is that during the latter part of the law firm's representation of Fashion it labored under a conflict of interest that was at such an extent that it compromised the law firm's level of advocacy and contributed to a trial outcome less favorable than would otherwise have been achieved. In dismissing the legal malpractice counterclaim, the motion court reviewed a record consisting of 17 different exhibits, ranging from pleadings to transcripts of arguments to testimony, both at trial and in depositions, as well as an e-mail, on the basis of which it made factual findings in support of its decision. The testimonial portion of that submission, alone, ran to more than 700 pages. Such a review, culminating in factual findings, would be most unusual even if this CPLR 3211 motion had been converted, which it was not, to one for summary judgment under CPLR 3211 (c) and 3212. The law firm argued that the 500 pages of exhibits constituted documentary evidence. In opposing the motion, Fashion Boutique relied on the detailed factual allegations of its counterclaims and whether reasonable inferences could be drawn therefrom. Since the motion was made pursuant to CPLR 3211 (a) (1) and (7), a court is obliged to accept the complaint's factual allegations as true, according to plaintiff the benefit of every possible favorable inference, and determining " 'only whether the facts as alleged fit within any cognizable legal the-

ory. . . . [D]ismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law' " (*Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, L.L.P.*, 96 NY2d 300, 303 [2001], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). The motion court clearly departed from this standard. Disregarding the allegations of the counterclaims and the possible inferences to be drawn therefrom, it reviewed evidence, including deposition and trial testimony and a three-page e-mail narrative, described by its author, Ms. Clarke, as an "overview" of the areas of interest as to which she could offer testimony, and made factual findings. In considering such evidence, the court went far beyond what the Legislature intended when, in 1963, it added paragraph (1) to CPLR 3211 (a) (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10). The submissions here are of a type that "do not meet the CPLR 3211 (a) (1) requirement of conclusively establishing [the] defense as a matter of law" (*IMO Indus. v Anderson Kill & Olick*, 267 AD2d 10, 11 [1999]). For instance, the motion court disregarded the fact that Ms. Clarke's e-mail was only an overview of her testimony and viewed it as the whole of her testimony. Nor did the court take into account the many ways Ms. Clarke indicated she could testify with personal knowledge about Fendi's campaign of disparagement. On this record, we find that the legal malpractice counterclaim's allegation that but for the law firm's failure, due to its debilitating conflict of interest, to make proper use of Ms. Clarke's testimony, the Fashion Boutique case against Fendi would have had a more favorable result, was not conclusively controverted. Thus, the legal malpractice counterclaim should be reinstated.

As to the claim for breach of fiduciary duty, we have consistently held that such a claim, premised on the same facts and seeking the identical relief sought in the legal malpractice cause of action, is redundant and should be dismissed (*Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo*, 290 AD2d 399, 400 [2002]; *see Murray Hill Invs. v Parker Chapin Flattau & Klimpl, LLP*, 305 AD2d 228, 229 [2003]).

We take this occasion to note that the court erred in holding that the "but for" standard of causation, applicable to a legal malpractice claim, does not apply to the claim for breach of fiduciary duty. Instead, it applied the less rigorous "substantial factor" causative standard. We have never differentiated between the standard of causation requested for a claim of legal malpractice and one for breach of fiduciary duty in the context of attorney liability. The claims are coextensive. Under New

York law, to establish the elements of proximate cause and actual damages, where the injury is the value of the claim lost, the client must meet the "case within a case" requirement, demonstrating that "but for" the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages (*Reibman v Senie*, 302 AD2d 290 [2003]; *Zarin v Reid & Priest*, 184 AD2d 385, 386 [1992]). *Gibbs v Breed, Abbott & Morgan* (271 AD2d 180 [2000]), relied upon by Fashion Boutique, did not involve a former client's breach of fiduciary claim against his attorneys, but rather a typical commercial dispute as to the fiduciary obligation owed by a lawyer to his former partners when departing to join another firm. Concur—Nardelli, J.P., Saxe, Sullivan and Gonzalez, JJ.