David H. TRAUTENBERG, Plaintiff,

v.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Brad S. Karp, and Daniel J. Toal, Defendants.

No. 06 Civ. 14211 (GBD).

United States District Court, S.D. New York.

Aug. 2, 2007.

**260**

Leo Kayser, III, Kayser & Redfern, LLP, New York, NY, John Michael Rediker, Haskell Slaughter Young & Rediker, LLC, Birmingham, AL, for Plaintiff.

Robert A. Atkins, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Plaintiff David H. Trautenberg sued defendants the law firm of Paul, Weiss, Rif- kind, Wharton & Garrison LLP, attorney Brad S. Karp, and attorney Daniel J. Toal (collectively "Paul Weiss"), for breach of fiduciary duty and violation of New York Judiciary Law § 487. Paul Weiss moved to dismiss, pursuant to Fed.R.Civ.P. 12(b) (6), for failure to state a claim. The motion to dismiss is granted.

### COMPLAINT ALLEGATIONS [1]

Plaintiff was a commissioned-based salesperson in, and co-head of, the Private Wealth Management Group of Solomon Smith Barney,[2] a wholly-owned subsidiary of Citigroup, Inc. In 2000, plaintiff had $1,881,412,000 of assets under management and he earned $17,537,698 in gross commissions for the Private Wealth Management Group. This ranked plaintiff second in gross commissions and ninth in assets under management within Solomon Smith Barney. That same year, plaintiff was promoted to Managing Director.

In 2002, state and federal authorities began investigating certain practices at Solomon Smith Barney, including the alleged dissemination of fraudulent and misleading research reports, conflicts of interest between research analysts and investment banking business, and the allocation of shares in Initial Public Offerings to Citigroup's and Solomon Smith Barney's investment banking clients, or "spinning." These investigations revealed that a then Managing Director of Solomon Smith Barney, who was also the preeminent analyst in the telecom industry, issued fraudulent research reports and ma-

---

1. Unless otherwise noted, the facts are taken from the Complaint and are presumed true for purposes of deciding Paul Weiss's motion to dismiss. *See, e.g., Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291, 2007 WL 1491403, *4 (S.D.N.Y. May 22, 2007) ("In reviewing a motion to dismiss, the court must treat all factual allegations in the complaint as true and must draw all reasonable infer-

ences in favor of the non-moving party.") (citations omitted).

2. Solomon Smith Barney's name was later changed to Citigroup Global Markets, Inc. For 2 ease of reference, however, this opinion will refer to this entity as Solomon Smith Barney.

nipulated the market to assist Citigroup in obtaining investment banking business from companies in the telecom industry.

As a result of these regulatory investigations, and the eventual bankruptcy of WorldCom, Inc., Citigroup and Solomon Smith Barney were named as defendants in many large civil litigations, including class action lawsuits and customer arbitrations, seeking billions of dollars in damages. Paul Weiss was Citigroup's lead counsel in these various investigations, litigations, and arbitrations.

Plaintiff was personally named as a defendant in two of the arbitrations initiated by individual clients of Solomon Smith Barney. He was represented in these arbitrations by Kramer, Levin, Naftalis & Frankel LLP. Paul Weiss, however, requested that it also be permitted to jointly represent plaintiff while it was also representing Citigroup, which was a co-defendant in these arbitrations. Plaintiff's independent counsel from Kramer Levin raised concerns with Brad Karp at Paul Weiss about Paul Weiss's ability to simultaneously represent Citigroup and plaintiff. Karp, on behalf of Paul Weiss, represented that Paul Weiss understood its obligation to act in the best interests of plaintiff. On that basis, plaintiff agreed to be represented by his own attorneys at Kramer Levin, and to Paul Weiss's joint representation of plaintiff and Citigroup. Plaintiff was also subpoenaed to be a witness in WorldCom's bankruptcy proceedings. According to plaintiff, defendant Toal, on behalf of Paul Weiss, "pleaded and virtually demanded that Paul Weiss be allowed to co-represent along with Kramer Levin Trautenberg, in his testimony in the WorldCom bankruptcy proceedings." Compl. ¶ 30. Plaintiff again consented to the joint representation, and Toal was allowed to participate in privileged meetings with plaintiff to prepare for his testimony.

In June 2003, Citigroup informed plaintiff that it wished to negotiate the terms of a separation agreement and terminate plaintiff's employment. Plaintiff retained two new attorneys—one from the firm of Wechsler & Cohen LLP, and the other from Kronish, Lieb, Weiner & Hellman LLP—to represent him in the negotiations. At this time, two in-house attorneys were leading the negotiations for Citigroup. At a January 14, 2004 meeting between Citigroup and plaintiff, one of Citigroup's in-house attorneys told plaintiff "that Paul Weiss had advised Citigroup/SSB 'not to pay Trautenberg a penny' on Trautenberg's employment matter." Compl. ¶ 42. This was the first time that plaintiff became aware of Paul Weiss's direct involvement in the employment negotiations on behalf of Citigroup.

According to plaintiff, Paul Weiss, without plaintiff's knowledge, began advising Citigroup in its negotiations with plaintiff in or about December 2003 or January 2004. Plaintiff claims that "Paul Weiss advised Citigroup/SSB not to pay or offer Trautenberg the amount Trautenberg was seeking in his separation negotiations." Compl. ¶ 58. By late January or early February 2004, Karp and Paul Weiss began openly acting as lead negotiator for Citigroup. At the time, Paul Weiss was still jointly representing Citigroup and plaintiff in the arbitrations. Plaintiff alleges that "[a]t no time prior to undertaking to advise and represent Citigroup/SSB in connection with Trautenberg's employment matter did Karp or Paul Weiss ask to meet with Trautenberg to explain and disclose the material facts and risks relating to Paul Weiss' conflict of interest in representing Citigroup/SSB against Trautenberg." Compl. ¶ 46. Nor did "Karp or Paul Weiss obtain, or attempt to obtain Trautenberg's consent to Paul Weiss' direct conflict of interest." *Id.* at ¶ 47.

Plaintiff and plaintiff's attorneys, however, were aware of Paul Weiss's dual role and its potential for conflict. On many occasions during the negotiations, plaintiff's attorneys told Paul Weiss that its representation of Citigroup against plaintiff was improper. On one such occasion, Karp responded by telling plaintiff's attorneys to "stop lecturing" him. Compl. ¶ 49. In addition, during the legal preparation for the WorldCom bankruptcy litigation, plaintiff "continually objected to Defendants' representation of Citigroup/SSB in connection with his employment matter and Defendants' conduct in 'holding him hostage' with respect to his employment matter until the completion of his WorldCom civil suit testimony." Id. at ¶ 61. Despite these objections, Paul Weiss did not withdraw as counsel for Citigroup in the negotiations, nor did plaintiff or his attorneys take any action to force Paul Weiss to withdraw from the negotiations or discontinue their dual representation in the other proceedings.

Plaintiff and Citigroup ultimately entered into a negotiated Separation Agreement, dated August 16, 2004, pursuant to which plaintiff received a $5 million separation payment. More than two years later, on December 6, 2006, plaintiff filed this lawsuit asserting claims for breach of fiduciary duty and violation of New York Judiciary Law § 487. He claims that as a result of Paul Weiss's breach of fiduciary duty, plaintiff's "bargaining position ... was compromised to such a degree that he was compelled to accept a separation agreement ... at millions of dollars in value below what he could have otherwise obtained but for Defendants' wrongdoing." Compl. § 8. Plaintiff claims damages in the amount of $20 million, the difference, he alleges, between a $25 million separation payment he "would have been able to have attained" had Paul Weiss not breached its fiduciary duty, and the $5 million he was forced to settle for and actually re-

ceived. Id. at 70. He also seeks disgorgement of all the fees Paul Weiss earned in representing, and paid by, Citigroup in plaintiff's employment matter, and an injunction preventing Paul Weiss from ever representing Citigroup against plaintiff again. Finally, plaintiff seeks treble compensatory damages pursuant to New York Judiciary Law § 487.

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir.2006) (citations omitted). The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citation omitted).

## BREACH OF FIDUCIARY DUTY

■ To state a claim for breach of fiduciary duty in New York, plaintiff must sufficiently allege "(1) the existence of a fiduciary relationship; (2) knowing breach of a duty that relationship imposes; and (3) damages suffered." *Nay ex rel. Thiele v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05 Civ. 10264, 2006 WL 2109467, *6 (S.D.N.Y. July 25, 2006) (citation omitted). And to recover damages, he "must do more than make allegations of unscrupulous acts." *Greenberg v. Joffee*, 34 A.D.3d 426, 824 N.Y.S.2d 355, 356 (2d Dep't 2006) (citation omitted). Rather, plaintiff "must, at a minimum, establish that [Paul Weiss's] actions were 'a substantial factor' in causing an identifiable loss." *Id.* (citation omitted). This re-

quires allegations that, if true, demonstrate "that 'but for' the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages." *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,* 10 A.D.3d 267, 780 N.Y.S.2d 593, 596 (1st Dep't 2004) (citations omitted).

 Here, the crux of plaintiff's breach-of-fiduciary-duty claim is that Paul Weiss violated New York's ethical rules by representing Citigroup in an action adverse to him and without his consent: "The Defendants had an affirmative obligation under the New York Lawyers Code of Professional Responsibility (the "Code") DR–5–101(A) and DR 5–105, and a legal obligation pursuant to their fiduciary duty and duty of loyalty owed to Trautenberg, to decline and to discontinue representing Citigroup/SSB in connection with Trautenberg's employment matter." Compl. ¶ 57. But even if Paul Weiss's conduct were determined to be a violation of New York's ethical rules for attorneys, it is well-established that the violation of a disciplinary rule, without more, does not establish a claim for breach of fiduciary duty. *See Schwartz v. Olshan Grundman Frome & Rosenzweig,* 302 A.D.2d 193, 753 N.Y.S.2d 482, 487 (1st Dep't 2003); *Agron v. Douglas W. Dunham, Esq. & Associates,* No. 02 Civ. 10071, 2004 WL 691682, *6 (S.D.N.Y. March 31, 2004).

Plaintiff argues, however, that "the complaint avers far more than a mere technical violation of a disciplinary rule." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Brief") at 11. For example, plaintiff alleges that during the course of Paul Weiss's representation of plaintiff in the arbitrations, Paul Weiss obtained confidential information about plaintiff's employment, and about "potential claims" that plaintiff might have against Citigroup, that it later used against plaintiff in the negotiations. Compl. ¶¶ 32, 59, 64. Plaintiff fails to articulate what or how privileged information was misused by Paul Weiss. He merely alleges that "using information regarding Trautenberg's employment which Paul Weiss had obtained from Trautenberg, Paul Weiss evaluated Trautenberg's various claims and advised Citigroup/SSB regarding these claims directly contrary to Trautenberg's best interest." Compl. ¶ 59. He alleges no information that would not have already have been known by or accessible to Citigroup, plaintiff's employer. Nor does he allege that there was any legitimate expectation that any information provided to Paul Weiss during the joint representation would not have been disclosed to Citigroup, irrespective of who served as its attorneys during the employment negotiations.[3] Moreover, plaintiff does not even attempt to allege that he did not agree to Paul Weiss' dual representation, or that he refused to negotiate, after independently consulting with his own counsel.

---

**3.** Since Paul Weiss was jointly representing Citigroup and plaintiff in the arbitrations, plaintiff had no reasonable expectation that any information Paul Weiss learned from him would not be shared with Citigroup. *See, e.g., Rocchigiani v. World Boxing Counsel,* 82 F.Supp.2d 182, 187–88 (S.D.N.Y.2000) (stating that one "client could not reasonably expect confidences imparted to the attorney during the course of the joint representation to be withheld from the other client") (cita-

tion omitted); *Tekni–Plex, Inc. v. Meyner & Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663, 670 (1996) ("Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences concerning the joint matter will remain secret from each other, and those confidential communications are not within the privilege in subsequent adverse proceedings between the co-clients.") (citation omitted).

Plaintiff also alleges that Paul Weiss advised Citigroup "to slow down and drag out the negotiation process" so that Paul Weiss "could maintain 'control' over Trautenberg as a witness," and that Paul Weiss was "holding him hostage" until the completion of his WorldCom testimony. *Id.* at ¶¶ 60–61. However, the Complaint contains no factual assertions regarding how Paul Weiss "drag[ged] out the negotiations" or held plaintiff "hostage." Nor is there any particular allegation to support an inference that such delay forced plaintiff to agree to accept a $5 million separation agreement which provided him $20 million less than he believed he was entitled.[4] Plaintiff's conclusory allegations are simply insufficient to state a claim, even under Rule 12(b) (6)'s liberal pleading standards. *See, e.g., Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.,* 451 F.3d 295, 307 (2d Cir.2006) (stating that a complaint that "consists of conclusory allegations unsupported by factual assertions ... fails even the liberal standard of Rule 12(b)(6)") (citations and internal quotation marks omitted).

Even if plaintiff's factual assertions were sufficient to support an allegation that Paul Weiss breached its fiduciary duty, he has not adequately alleged that this breach caused his damages—*i.e.,* "that 'but for' [Paul Weiss's] conduct [plaintiff] ... would not have sustained any ascertainable damages." *Fashion Boutique of Short Hills,* 780 N.Y.S.2d at 596. Nowhere in the complaint does plaintiff make the "but for" connection between Paul Weiss's conduct and his claim of a "loss" of $20 million. Indeed, plaintiff does not even allege that Citigroup ever offered him, or even considered offering him, a $25 million severance. Instead, plaintiff merely alleges that "the value of the book of business developed and generated by Trautenberg was in excess of $25 million." Compl. § 65. He contends that because he left his book of business with Citigroup upon his departure, he should have received—and believes he could have otherwise negotiated, absent Paul Weiss's participation—at least a $25 million severance payment. That contention is purely speculative. He merely contends that Paul Weiss's dual representation "served to strengthen Citigroup/SSB's and weaken Trautenberg's respective relative negotiating stances ...." Compl. ¶ 63. These allegations cannot support a conclusion that Paul Weiss's conduct prevented plaintiff from receiving what he could have reasonably anticipated would have been a $25 million severance payment, if Citigroup had access to the same information but was represented by different lawyers.[5] As plaintiff has not alleged a breach of fiduciary duty on the part of Paul Weiss that was the "but for" cause of damages plaintiff alleges to have suffered, this claim is dismissed.

## NEW YORK JUDICIARY LAW § 487

Plaintiff also asserts a claim under § 487 of the New York Judiciary Law. That section permits an aggrieved party to recover treble damages in a civil action against an attorney that "[i]s guilty of any deceit or

---

**4.** Plaintiff bases his claim on the conclusory and speculative allegation that "As a result of Defendants' breach of fiduciary duty, Trautenberg's bargaining position with SSB was compromised to such a degree that he was compelled to accept a separation agreement with SSB, also Defendants' client, at millions of dollars in value below what he could have obtained but for Defendants' wrongdoing." Compl. ¶ 8.

**5.** It must be emphasized that plaintiff had independent counsel who negotiated on his behalf and presumably advised him to accept the terms of the settlement agreement and a five million dollar severance payment, instead of refusing to negotiate, or pursuing legal action prior to agreeing to accept what he now considers an inadequate amount.

collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Judiciary Law § 487 (2005).[6]

■ For § 487 to apply, however, the deceit must be of a party to a lawsuit in the course of a pending judicial proceeding. *See, e.g., Gelmin v. Quicke*, 224 A.D.2d 481, 638 N.Y.S.2d 132, 134 (2d Dep't 1996) (stating that the "party" referred to in § 487 is "clearly a party to an action pending in a court in reference to which the deceit is practiced, and not a person outside, not connected with the same at the time or with the court") (quoting *Looff v. Lawton*, 97 N.Y. 478, 482 (1884)); *O'Brien v. Alexander*, 898 F.Supp. 162, 168–69 (S.D.N.Y.1995) (dismissing a § 487 claim "[s]ince no lawsuit was pending when the alleged representations in question were made," and because "section 487 by its terms applies only to statements made to the court or any party to a lawsuit").

■ Here, Paul Weiss allegedly deceived plaintiff in December, 2003, by initially failing to inform him of its representation of Citigroup in connection with negotiating the Separation Agreement. Clearly, negotiations between an employer and an employee over the terms of a separation agreement is not a judicial proceeding, and this claim can be dismissed on that ground alone.[7]

Even if an alleged concealment had occurred in a pending lawsuit, however, there are no allegations in the Complaint that would support a finding that Paul Weiss engaged in conduct intended to deceive plaintiff. *See, e.g., Trepel*, 2005 WL 1107010 at *4 (stating that an act must be

---

6. Paul Weiss contends that a "chronic and extreme pattern of legal delinquency" is a prerequisite to liability under this section. There is some support for this position. *See, e.g., Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 692 N.Y.S.2d 361, 362 (1st Dep't 1999) (stating that under § 487, "civil relief and the imposition of treble damages is warranted only where the defendant attorney has 'engaged in a chronic, extreme pattern of legal delinquency.'") (citations omitted). But other courts have held that such a pattern of behavior is not required, and that "[a] single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability." *Trepel v. Dippold*, No. 04 Civ. 8310, 2005 WL 1107010, *4 (S.D.N.Y. May 9, 2005) (citations omitted); *see also Izko Sportswear Co., Inc. v. Flaum*, 25 A.D.3d 534, 809 N.Y.S.2d 119, 122 (2d Dep't 2006) ("A violation of Judiciary Law § 487 may be established 'either by defendant's alleged deceit *or* by an alleged chronic, extreme pattern of legal delinquency by the defendant.'") (citations omitted) (emphasis in the original). This Court need not further address this split of authority, however, because, as is discussed in more detail below, plaintiff has insufficiently alleged a deceptive act on the part of Paul Weiss to support liability under § 487.

7. In his opposition brief, plaintiff argues that this requirement is satisfied because the alleged deceit "occurred in the context of actual, then-pending arbitration and legal proceedings." Opp. Brief at 19. Specifically, plaintiff maintains that Paul Weiss deceived plaintiff about it's representation of Citigroup in the employment matter while the firm was representing plaintiff in the arbitrations. But even if Paul Weiss had intentionally concealed its role from plaintiff, this "deceit" would have nothing to do with the arbitration proceedings, and there are no allegations that Paul Weiss acted in any way other than in the best interest of plaintiff in those arbitrations. In fact, Paul Weiss helped plaintiff achieve victory in both of the arbitrations in which it jointly defended plaintiff. *See McWilliam v. Citigroup Global Markets, Inc.*, NASD Case No. 03–03452 (Order of the Panel 5/18/2005) (dismissing claims against Trautenberg) (Ex. C to the Affidavit of Robert A. Atkins ("Atkins Aff.")); *Shagen v. Solomon Smith Barney Holdings, Inc.*, AAA Case No. 13 169 00799 03 (final arbitration award denying in their entirety the claims against defendants, including Trautenberg) (Atkins Aff. Ex. D). Additionally, in the *Shagen* arbitration, the arbitration panel, at Paul Weiss's request, expunged the arbitration from plaintiff's records. *Shagen*, AAA Case No. 13 169 00799 03 at p. 30.

"sufficiently egregious and accompanied by *an intent to deceive*" to be actionable under § 487) (emphasis added); *Jaroslawicz v. Cohen*, 12 A.D.3d 160, 783 N.Y.S.2d 467 (1st Dep't 2004) (affirming dismissal of a § 487 claim because plaintiff failed to allege that defendant acted with intent to deceive). Indeed, by at least January 2004, plaintiff knew of Paul Weiss's involvement in the negotiations, and, by late January or early February 2004, that Karp was openly acting as Citigroup's lead negotiator. Compl. ¶¶ 44–46. During the subsequent months of open negotiations, plaintiff and his attorneys were fully aware of Paul Weiss's role prior to his agreement to settle and accept a $5 million payment. Plaintiff is a well-educated, sophisticated businessman who was represented by *two* of his own, very competent attorneys during the year-long negotiations. Even before Paul Weiss took a lead settlement role, plaintiff knew that Paul Weiss was Citigroup's attorney, and that it would be under no obligation to withhold any information shared during their joint representation. Thus, plaintiff cannot now seriously claim that Paul Weiss engaged in deceptive conduct during the negotiations, or that he was in fact deceived into settling, to his twenty-million-dollar detriment.

Accordingly, plaintiff cannot state a claim under New York Judiciary Law § 487.

## CONCLUSION

Plaintiff has not stated a claim for breach of fiduciary duty, or for breach of New York Judiciary Law § 487. Therefore, the motion to dismiss the Complaint is GRANTED. This case is DISMISSED.

SO ORDERED.