| **Cummo v Kerzner** |
| --- |
| 2025 NY Slip Op 31632(U) |
| May 5, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 650773/2024 |
| Judge: David B. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. DAVID B. COHEN**                    PART                    58

*Justice*

-------------------------------------------------------------------------------X

VANESSA CUMMO, KESH HAIRCARE HOLDINGS LLC

                      Plaintiffs,

               - v -

JUSTIN KERZNER, THE HOLDING COMPANY OF
SPORTING CONTACT, INC. (D/B/A SPORTING
CONTACT),

                    Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 650773/2024 |
| MOTION DATE | 05/22/2024 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 31, 32, 34, 35 were read on this motion to/for _____DISMISS_____.

    Defendants Justin Kerzner and The Holding Company of Sporting Contact Inc. d/b/a Sporting Contact (Sporting Contact) (together, defendants), move, pursuant to CPLR 3211(a)(1) and (7), to dismiss the amended complaint filed by plaintiffs Vanessa Cummo and Kesh Haircare Holdings LLC (KHH) (together, plaintiffs), and, pursuant to CPLR 325(d), to transfer this action to Civil Court. Plaintiffs oppose the motion in all respects.

## I.    PROCEDURAL BACKGROUND AND FACTS

    Plaintiffs commenced this action against defendants for defendants' failure to pay plaintiffs earned wages in the amount of $55,000, in violation of New York Labor Law §190, *et seq.*, or alternatively, for defendants' breach of contract, and quasi-contract (NYSCEF 28).

### The Contractor Agreement (NYSCEF 28)

    On February 1, 2023, KHH entered into a contractor agreement with Sporting Contact (Contract), which identified Kerzner as Sporting Contact's Chief Executive Officer (CEO), KHH as the Chief Operating Officer (COO), and Cummo as KHH's "managing-member," who would

650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL
Motion No.  002

Page 1 of 16

[* 1]

perform the contractual obligations on behalf of KHH. Each party was an "independent contractor, and not a partner, joint venture, or agent of the other." KHH's responsibilities included maintaining Sporting Contact's end-to-end supply chain, retail operations, customer service relations, inventory management, labor management, and scheduling, hiring, and creating training programs for new hires. KHH was also responsible for teaming with Sporting Contact's finance partner to create budgets and forecasts, and for taking general ownership and accountability of the product and its financial margins, among other tasks.

KHH charged a flat monthly fee of $18,500, from which Sporting Contact would not withhold any taxes. Either party could terminate the Contract at any point upon thirty days' notice. In the event of KHH's termination without cause, Sporting Contact would pay "all unpaid and undisputed amounts for services completed prior to termination," including a termination severance payment, the amount of which varied based on the duration of KHH's service with Sporting Contact. As part of additional compensation, KHH had the right to purchase up to 1.75% of Sporting Contact's common stock.

Amended Verified Complaint (NYSCEF 26)

Plaintiffs assert that, despite the Contract designating Cummo as COO and independent contractor, in practice, she was defendants' employee and is thus entitled to lost wages under New York law. Her classification as an employee was shown by defendants' significant control over her work, including setting her schedule, controlling her job duties, and providing her with work equipment. In addition, she was assigned and used an official company email and worked primarily from Sporting Contact's office or retail store.

Plaintiffs further argue that Cummo did not qualify for any exemptions under New York labor law because her role did not involve executive, administrative, or professional duties. Her

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
**Motion No.  002**

**Page 2 of 16**

2 of 16

primary job duties turned out to be routine, mechanical, or physical work and involved operating Sporting Contact's retail store, which did not require specialized skills or education. Furthermore, unlike an executive, she did not have the authority to hire, fire, or make strategic business decisions.

Despite fulfilling all contractual obligations, on November 2, 2023, Cummo was terminated from her position with Sporting Contact without cause. Plaintiffs pleaded that Cummo "performed all aspects of her contract with defendants and did not breach the contract in any respect." Plaintiffs allege that defendants failed to pay Cummo $55,500 and that they made demands for payments, but defendants refused.

Other Pertinent Facts

On June 21, 2023, Sporting Contact and KHH entered into a restricted stock purchase agreement, under which KHH acquired the right to 17,500 shares of Sporting Contact common stock, subject to vesting and other requirements (NYSCEF 8).

As of March 7, 2024, KHH had no certificate of authority on file with the Secretary of State of the State of New York to do business in New York as a foreign Limited Liability Company (NYSCEF 5). On April 19, 2024, KHH filed for a certificate of authority, which was approved on April 22, 2024 (NYSCEF 27).

In support of their motion, defendants submitted unaffirmed snapshots of Slack messages between "Justin Kerzner," "Vanessa," and others, discussing Vanessa's vacation plans, her dental procedures, and whether she worked remotely or from Sporting Contact's headquarters (NYSCEF 10-2, 14). Defendants also submitted snapshots of emails showing general discussions between Cummo and Kerzner regarding business goals, as well as spreadsheets showing unidentified charts and data (NYSCEF 10-18).

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
  **Motion No.  002**

**Page 3 of 16**

3 of 16

[* 3]

## II.     DISCUSSION

### KHH Standing

Defendants allege that because KHH is a foreign LLC and was conducting business in New York without a certificate of authority, pursuant to LLC Law § 808(a), it lacks standing to maintain this action.

Plaintiffs oppose, asserting that KHH's failure to obtain a certificate of authority before initiating this action is not fatal and that the issue is moot because it has since registered as a foreign corporation.

Defendants argue that, although KHH obtained a certificate of authority, it has neither pleaded nor indicated it will comply with its remaining filing obligations under New York law.

Paragraph (a) of New York Limited Liability Company Law § 808 provides that a foreign limited liability company without a certificate of authority "may not maintain any action, suit or special proceeding in any court of this state unless and until such limited liability company shall have received a certificate of authority in this state."  However, a LLC's "failure to obtain a certificate of authority to do business in New York before initiating the action is not a fatal jurisdictional defect" (*Basile v Mulholland*, 73 AD3d 597 [1st Dept 2010]; *see RMS Residential Properties, LLC v Naaze,* 28 Misc 3d 843 [Dist Ct, Nassau County 2010] [staying legal proceedings until foreign LLC received certificate of authority from secretary of state]).

Although plaintiffs did not have a certificate of authority on file at the time of commencing this action, such a defect is not fatal because they have since obtained a certificate pursuant to LLC Law § 802(a).  Defendants' allegation that plaintiffs may fail to comply with New York LLC law in the future is premature and speculative.  Accordingly, plaintiffs have standing, and defendants' motion to dismiss, as it relates to LLC Law § 808(a), is denied.

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
**Motion No.  002**

**Page 4 of 16**

[* 4]

4 of 16

## CPLR 3211 Standard

CPLR 3211(a)(1) states that "[a] party may move for judgment dismissing one or more causes of action asserted against him on the grounds that … a defense is founded upon documentary evidence[.]" Dismissal pursuant to CPLR 3211(a)(1) is warranted only if the documentary evidence submitted "utterly refutes plaintiff's factual allegations" (*Kolchins v Evolution Markets, Inc.*, 128 AD3d 47 [1st Dept 2015]), and if, giving the plaintiff the benefit of every possible inference, the documentary evidence conclusively establishes a defense to the asserted claims as a matter of law (*Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.*, 10 AD3d 267 [1st Dept 2004]).

To dismiss a complaint under CPLR 3211(a)(7), the pleading must be given a liberal construction. The court is required to "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83 [1994]; *Weil, Gotshal & Manges, LLP*, 10 AD3d at 271; *see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144 [2002]).

## Documentary Evidence

Defendants contend that the submitted emails and messages exchanged between Cummo and Kerzner qualify as documentary evidence, and that they demonstrate Cummo's exempt status from protection under the NYLL, requiring dismissal of her claims for benefits and wage supplements.

Plaintiffs oppose, arguing that the submitted emails and messages do not qualify as documentary evidence as a matter of law. They further contend that whether Cummo worked as

an employee or independent contractor is a fact inquiry not properly considered at this stage of the action.

Defendants reply, arguing that in a pre-answer motion to dismiss, emails and messages of the type at issue here qualify as documentary evidence.

"To qualify as 'documentary,' the paper's content must be essentially undeniable and . . ., assuming the verity of [the paper] and the validity of its execution, will itself support the ground on which the motion is based  (*Amsterdam Hosp. Group, LLC v Marshall-Alan Assoc., Inc.*, 120 AD3d 431, 432 [1st Dept 2014] [internal citations omitted]).  Emails may be considered documentary evidence if those papers are "essentially undeniable" (*id.*), but dismissal is only warranted if the emails "utterly refute" a plaintiff's claim (*see Kolchins* 128 AD3d 47, 58).

Here, defendants rely on unaffirmed snapshots of emails and messages between Cummo and Kerzner, allegedly showing Cummo's vacation plans, personal appointments, work location considerations, and business discussions.  While defendants argue that the content of the documents is undeniable, the documents do not utterly refute plaintiffs' claim that Cummo was an employee and that the Contract was a sham.  And while the documents may raise credibility issues regarding whether Cummo acted as an independent contractor, an employee, or Sporting Contact's COO, they do not conclusively establish that her employment duties fit a specific classification.  Therefore, the submitted emails and messages do not constitute the type of documentary evidence contemplated by CPLR 3211(a)(1) (*Opt. Communications Group, Inc. v Worms*, 217 AD3d 458 [1st Dept 2023] [holding that emails and evidence submitted by defendants did not qualify as documentary evidence and were insufficient for purposes of dismissal under CPLR 3211 because they did not utterly refute allegations in complaint]).

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
**Motion No.  002**

**Page 6 of 16**

6 of 16

Accordingly, defendants' arguments relying on the submitted emails and messages as documentary evidence are not considered in relation to this motion.

<u>First Cause of Action; NYLL § 190, *et seq,*</u>

Plaintiffs' first cause of action, by Cummo against defendants, alleges violations of the New York Labor Law for failing and refusing to pay Cummo's earned wages and severance pay in the amount of $55,500.

*Cummo as an Independent Contractor*

In the amended complaint, plaintiffs contend that although the Contract labels Cummo as an "Independent Contractor," she was, in fact, an employee as defined under the NYLL and entitled to the alleged wages and severance pay.

Defendants argue that documentary evidence proves Cummo was an outsourced independent contractor because she was free to pursue other employment opportunities, created her own schedule, and was explicitly designated as an independent contractor in the Contract.

Plaintiffs oppose, arguing that despite the Contract's language, Cummo was an employee and that the Contract was a sham designed to allow defendants to avoid their obligations as the employer.

Defendants oppose, reasserting their previous arguments.

Section 190(2) of the NYLL defines an "employee" as "any person employed for hire by an employer in any employment." Factors that courts consider when determining whether a worker is an independent contractor or employee "include whether the worker: (1) worked at [her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." (*Bynog v. Cipriani Grp., Inc.*, 1 NY3d 193, 198 [2003]). NYLL's primary emphasis is on the degree of control exercised

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**          **Page 7 of 16**
**Motion No.  002**

7 of 16

by the purported employer over the results produced by the plaintiff/employee, or the means used to achieve the results (*Bynog,* 1 NY3d at 198).

Although the Contract labeled Cummo as an independent contractor, defendants' assertions that Cummo was an outsourced contractor who controlled her work and was free to engage in separate business ventures rely primarily on the emails and messages as documentary evidence not considered by the court, as stated above.

Defendants' remaining allegations concerning Cummo's payment structure—that she invoiced KHH rather than being on Sporting Contact's payroll, and that no taxes were withheld—are undisputed but not dispositive in determining her employment classification (*Chaouni v Ali*, 105 AD3d 424 [1st Dept 2013] [employer not withholding taxes and issuing 1099 forms instead of W-2 forms is only one of many factors considered under NYLL]).

Therefore, defendants' motion to dismiss based on Cummo's alleged status as an independent contractor is denied.

### *Cummo as an Owner and Employer*

Defendants contend that even if Cummo was not an independent contractor, she was an owner and employer, exempt from protection under the NYLL. They argue that Cummo's role as COO, which included overseeing labor management, scheduling, and hiring, exempts her from NYLL protections. Additionally, defendants assert that Cummo's ownership interest in Sporting Contact further supports that she was an owner rather than an employee.

In opposition, plaintiffs reassert that the scope of Cummo's job responsibilities, as outlined in the Contract, misrepresented the tasks she actually performed for Sporting Contact, and that Kerzner controlled her supervisory responsibilities. They also contend that Cummo's

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
**Motion No.  002**

**Page 8 of 16**

8 of 16

[* 8]

small ownership stake in Sporting Contact does not preclude her from being classified as an employee and receiving protections under the NYLL.

Defendants reply that the relevant inquiry is whether Cummo, as a shareholder, exercised sufficient control over the business to be classified as an employer rather than an employee under the NYLL. They maintain that ownership is a factor supporting employer classification.

An "employer includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service" (Labor Law § 190). Courts use the "economic reality" test to determine whether the definition of "employer" has been met under the NYLL, weighing whether the alleged employer "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records" (*Matter of Carver v State*, 26 NY3d 272, 280 [2015]).

Although defendants assert that Cummo performed tasks characteristic of an employer, such as hiring, firing, and scheduling, these claims are unsupported by any evidence. Plaintiffs maintain that the supervisory role Cummo had over Sporting Contact employees was overseen and controlled by Kerzner. Furthermore, while defendants submitted a restricted stock purchase agreement showing that Cummo purchased 1.75% of the company's stock, they do not cite any authority stating such ownership denies an employee's protections under the NYLL. Although defendants correctly note that shareholding is a factor in determining whether Cummo is an employer or owner, it alone is not dispositive.

Accordingly, defendants' motion to dismiss, based on Cummo's alleged status as an employer or owner, is denied.

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
**Motion No.  002**

**Page 9 of 16**

[* 9]

9 of 16

## *Cummo as an Executive and/or Administrative Professional*

Defendants argue that Cummo is barred from any claim under the NYLL because documentary evidence plainly shows that her tasks performed were those of an executive rather than an employee.   Cummo's classification as an executive or professional is further supported by her title of COO and her $18,500 per month fee.

In reply, plaintiffs reassert their previous arguments that despite the Contract giving her the title of COO, she was required to perform more manual, employee-like work, and the Contract was a sham designed to avoid employer responsibilities under the NYLL.

Defendants reassert their previous arguments and contend that Cummo's role, as defined in the Contract, aligns with the statutory criteria for exemption from NYLL protections.

Except where expressly excluded, executives are considered employees under the NYLL (*Pachter v Bernard Hodes Group, Inc.,* 10 NY3d 609 [2008]).  Under Section 190(7), "any person employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of one thousand three hundred dollars a week" is exempt from coverage under Section 191 (s*ee Eden v. St. Luke's-Roosevelt Hosp. Ctr*., [1st Dept 2012]).

Section 191 governs the payment of wages by setting forth rules by which employers make payments and the methods of compensation.  While Section 190(7) creates an exemption for how employers pay executives, determined by the executive's weekly earnings in excess of one thousand three hundred dollars a week, this earnings threshold alone is not sufficient to establish this exemption.  Rather, it depends on the employee's classification as an executive or professional, and thus the primary duties performed (*Meregildo v Diaz*, 154 AD3d 630 [1st Dept 2017] [employee found not to be an exempt executive because her duties were not primarily managerial]).  "The fact that an employee performs nonexempt work does not disqualify

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL
Motion No.  002**

**Page 10 of 16**

10 of 16

an employee from exempt status [under the NYLL] if she concurrently performs exempt functions and her 'primary duties' qualify for exemption" (*Mohammed v Start Treatment & Recovery Centers, Inc.,* 64 Misc 3d 1 [App Term 1st Dept 2019]).

Here, defendants rely on plaintiffs' assertions that Cummo operated Sporting Contact's retail store, managed banking and security accounts, and had access to financial statements to demonstrate she was an executive under the NYLL. While such allegations may support classifying Cummo as an executive or administrator, these tasks alone do not "resolve all factual issues to the asserted claims as a matter of law" (*Kolchins*, 128 AD3d 47, 58). In any event, Cummo contends that Kerzner maintained authority over all final decisions and that her primary functions and duties were those of an employee, not a COO or executive. Therefore, even though Cummo earned more than one thousand three hundred dollars per week, whether her primary duties were that of an employee or an executive, continues to be in dispute.[1]

Accordingly, defendants' motion to dismiss as it relates to Cummo's alleged status as an executive or administrative professional is denied.

### *Benefits and Wages under NYLL § 193*

In the amended complaint, plaintiffs argue that defendants violated the NYLL by failing to pay Cummo $55,500 in wages.

Defendants contend that Cummo seeks compensation for payments that do not fall under the NYLL, specifically benefits and supplemental payments, which are not considered wages. They also argue that the nonpayment of Cummo's October 2023 fee was not a wage deduction because she was terminated for non-performance, thereby eliminating KHH's claims to notice or

---

[1] NYLL Section 190(7) was amended in March 2023 to increase the weekly earnings from nine hundred dollars to one thousand three hundred dollars a week.

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**   **Page 11 of 16**
**Motion No.  002**

11 of 16

severance pay. Lasty defendants assert that Cummo cannot use the NYLL to recover any benefits or wage supplements because KHH is the named party in the Contract

Plaintiffs oppose, reasserting that the allegations in the complaint must be taken as true, and therefore, the factual dispute about damages is irrelevant at this stage of the case.

Defendants reply, rearguing that plaintiffs fail to state a claim because they do not specify what services Cummo performed, when she performed them, or how she calculated the $55,500 owed. They further claim that plaintiffs' admission of Cummo not performing the services outlined in the Contract constitutes a material breach, justifying Sporting Contact's termination of the Contract for cause.

Labor Law § 193(1)(b) provides that "[n]o employer shall make any deduction from the wages of an employee" (NYLL §193). "Wages" are defined as the "earnings of an employee for labor or services rendered" and include "benefits or wage supplements," as defined in Section 198(c) with exceptions not relevant here (NYLL §190[1]). The "wholesale withholding of payment" is not a "deduction" within the meaning Labor Law § 193 (*Kolchins v Evolution Markets, Inc*., 182 AD3d 408 [1st Dept 2020] [failure to pay a "Production Bonus" was a "wholesale withholding of payment," and not a deduction], *see Perella Weinberg Partners LLC v Kramer*, 153 AD3d 443 [1st Dept 2017]).

Here, the parties' allegations that Sporting Contact withheld wage and benefit supplements hinges directly on Cummo's employment classification as an employee rather than an independent contractor or executive. As discussed above, defendants have not provided sufficient documentary evidence to utterly refute plaintiffs' claim regarding Cummo's employment classification. Cummo's classification as an employee or independent contractor will determine whether Sporting Contact's failure to pay the October 2023 fee constitutes a

**650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL**
**Motion No.  002**

**Page 12 of 16**

violation of the wage and benefit provisions of the NYLL or alternatively was a wholesale withholding of payment (*see* Labor Law § 193). Similarly, whether Cummo was entitled to notice, or severance pay, again, depends on her employment classification (*id.*; *see also Fraiberg v 4Kids Entertainment, Inc.*, 75 AD3d 580 [2d Dept 2010] [although plaintiff was generally covered by protections of Labor Law article 6, as a bona fide executive, she could not assert claim to compel payment of severance package]).

Defendants' argument that Cummo materially breached the Contract, while discussed below is unavailing because plaintiffs pleaded in their amended complaint that Cummo "performed all aspects of her Contract with Defendants and did not breach the Contract in any respect."

Accordingly, defendants' motion to dismiss regarding wage and supplemental benefits claims is denied.

<u>Second Cause of Action: Breach of Contract</u>

In the second cause of action for breach of contract, by KHH against Sporting Contact, plaintiffs plead in the alternative, arguing that if the court determines Cummo was an independent contractor, defendants breached their employment contract with KHH, resulting in damages.

Defendants contend that because plaintiffs concede in the amended complaint that Cummo did not perform the duties outlined in the Contract, KHH, as the named contractor, failed to perform and thus materially breached the Contract, barring it from a breach of contract claim. Defendants further assert that even absent KHH's material breach, Sporting Contact had cause to terminate the Contract for its poor performance. Lastly, defendants assert that KHH

650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL
Motion No. 002

Page 13 of 16

fails to identify what specific provisions of the Contract were breached, and therefore, the breach of Contract claim must be dismissed.

Plaintiffs oppose, reasserting their previous arguments.

To plead a breach of contract, a plaintiff must allege: (1) "the existence of a contract"; (2) "plaintiff's performance thereunder"; (3) "defendant's breach thereof"; and (4) "resulting damages" (*Second Source Funding, LLC v Yellowstone Cap., LLC*, 144 AD3d 445, 445-46 [1st Dept 2016]).

Here, plaintiffs have pleaded all elements of a valid contract claim—namely, that despite the language classifying KHH as an independent contractor being a sham, a valid contract existed; that Cummo fully performed her duties on behalf of KHH for Sporting Contact; and that defendants breached the Contract when Cummo was terminated from her employment, resulting in damages. Assuming KHH is an independent contractor, its entitlement to notice or termination pay depends on whether defendants had cause to terminate the Contract, the supporting facts of which have not been presented at this stage in the pleadings. Similarly, defendants' allegation that KHH's poor performance constituted a material breach relies on emails and messages as documentary evidence, which are not considered in this pre-answer motion. Because the court must accept all facts in the amended complaint as true, defendants' motion to dismiss plaintiffs' second cause of action fails.

### Third and Fourth Causes of Action; Quantum Meruit and Unjust Enrichment

For the third and fourth causes of action, plaintiffs pleaded quantum meruit and unjust enrichment. They assert that if the Contract is deemed unenforceable, they are still entitled to recover the reasonable value of the services provided, which they value at $55,500. Plaintiffs argue that defendants benefited from these services without compensating them, resulting in

650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL
Motion No.  002

Page 14 of 16

14 of 16

unjust enrichment. Therefore, under both theories, plaintiffs seek compensation in the amount of $55,500.

Defendants contend that plaintiffs' quantum meruit and unjust enrichment claims should be dismissed as duplicative of the breach of contract claim because the dispute is governed by a valid contract. They further assert that plaintiffs cannot recover under quasi-contract theories, as severance or notice pay is not compensation for services rendered, and Sporting Contact was not unjustly enriched. Even if these claims were viable, defendants assert that the maximum potential recovery is under $10,000, making Supreme Court jurisdiction improper.

Plaintiffs are not precluded from bringing an action for "breach of contract and, as alternative theories, quantum meruit, and unjust enrichment" (*Loheac v Children's Corner Learning Ctr*., 51 AD3d 476 [1st Dept 2008]). Here, because plaintiffs may plead quantum meruit and unjust enrichment as alternative theories, defendants' motion to dismiss as duplicative is denied.

Transfer Request

Under CPLR 325(d), the Supreme Court may transfer a case to a lower court when it is evident that the damages fall within the lower court's jurisdictional limits (*see Genson v Sixty Sutton Corp*., 74 AD3d 560 [1st Dept 2010] [transfer to lower court is appropriate when it becomes evident that amount in controversy is within courts jurisdictional limits]). Because it is not evident that plaintiffs' damages are less than $50,000 and thus fall within the Civil Courts jurisdictional limits, defendants' request to transfer the case to Civil Court is denied.

Accordingly, it is hereby

ORDERED that defendants' motion to dismiss is denied in its entirety; and further

650773/2024   CUMMO, VANESSA ET AL vs. KERZNER, JUSTIN ET AL
Motion No.  002

Page 15 of 16

15 of 16

[* 15]

ORDERED that defendants are directed to file an answer within 20 days of the service of this decision and order with notice of entry; and further it is

ORDERED that the parties are directed to appear for a preliminary conference on June 10, 2025, at 9:30 a.m. at 71 Thomas Street, Room 305, New York, New York, 10013 and that the parties are to be fully prepared to discuss settlement on the date of the conference.

**5/5/2025**

_____
**DATE**

_____
**DAVID B. COHEN, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 16]