■ JUSTIN SAMUELS, Appellant, v WILLIAM MORRIS AGENCY et al., Respondents. [998 NYS2d 346]—

Order and judgment (one paper), Supreme Court, New York County (Lucy Billings, J.), entered February 4, 2013, which granted defendants' motion to dismiss the complaint alleging discrimination under the New York State and City Human Rights Laws, unanimously affirmed, without costs.

Plaintiff failed to establish a prima facie case of discrimination under the State or City Human Rights Laws because he failed to allege that defendants, leading talent agencies in the movie industry that rejected plaintiff's screenplay submissions, were actually aware of his race (*Matter of Fuentes v New York City Commn. on Human Rights*, 26 AD3d 198 [1st Dept 2006]; *see also Priore v New York Yankees*, 307 AD2d 67, 72 [1st Dept 2003], *lv denied* 1 NY3d 504 [2003]). The complaint merely alleges that plaintiff sent defendants a link to a social networking site that contained his photograph, which would show that he is black, and that his photo was also available on the internet. In fact, the complaint itself suggests that defendants did not reject

his screenplay submissions on account of his race, but because defendants reviewed such submissions only when they were referred by a movie industry insider, and plaintiff did not know such an insider (*see Stallings v U.S. Elecs.*, 270 AD2d 188 [1st Dept 2000]).

The complaint also fails to allege discrimination under a disparate impact theory because it fails to allege any facts showing that defendants' insider-referral policy falls more harshly on black screenwriter applicants than other groups (*see e.g. Mete v New York State Off. of Mental Retardation & Dev. Disabilities*, 21 AD3d 288, 296-297 [1st Dept 2005]; *see also Byrnie v Town of Cromwell, Bd. of Educ.*, 243 F3d 93, 111 [2d Cir 2001]).

Instead, the complaint merely alleges that 5% or less of the movie industry is black, whereas 12.92% of the United States population in 2009 was black. Even assuming that the movie industry at large, rather than the screenwriting industry, is the relevant workforce, the complaint merely compares the percentage of black individuals in the movie industry to black individuals in the general population based on the unsupported assumption that the pool of aspiring black screenwriters tracks the general population. This does not suffice (Administrative Code of City of NY § 8-107 [17] [b]; *see also Trezza v Hartford, Inc.*, 1998 WL 912101, *7, 1998 US Dist LEXIS 20206, *22-23 [SD NY, Dec. 30, 1998, No. 98-CIV-2205 (MBM)]). Moreover, even assuming that plaintiff was entitled to discovery to acquire the relevant statistical data, discovery would not cure the other deficiencies in the complaint. The complaint further fails to adequately allege that Samuels sought "employment" with defendants, as required to support his State and City claims for unlawful discriminatory practices in "employment" by employers, and discrimination in referring him to an employer by an employment agency (*see* Executive Law § 296 [1] [a], [b]; Administrative Code § 8-107 [1] [a], [b]). It contains only speculative allegations that defendants might "contract" on a screenwriter's behalf with other corporations and individuals in connection with a screenplay. A mere contract for payment does not in itself establish an employment relationship. The complaint does not allege that defendants personally hire screenwriters or otherwise find them opportunities for work, as opposed to merely selling their screenplays.

Finally, the motion court correctly concluded that the complaint is devoid of any factual allegations to support plaintiff's claims of unlawful boycott (Executive Law § 296 [13]; Administrative Code § 8-107 [18]; *see Scott v Massachusetts Mut. Life Ins. Co.*, 86 NY2d 429, 436-437 [1995]). Concur—

Sweeny, J.P., DeGrasse, Manzanet-Daniels, Feinman and Gische, JJ.