Hunold v City of New York (2024 NY Slip Op 51241(U))

[*1]

Hunold v City of New York

2024 NY Slip Op 51241(U)

Decided on September 10, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 10, 2024
Supreme Court, New York County

Jeffrey Hunold, Plaintiff,

against
The City of New York, THE NEW YORK CITY POLICE DEPARTMENT, MICHAEL MELOCOWSKY, JOHN DOES, ERIC EICHENHOLTZ, TANYA MEISENHOLDER, Defendant.

Index No. 156864/2023

Sabrina T. Smith, Esq. for Defendants
Jimmy F. Wagner , Esq. for Plaintiff

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31 were read on this motion to/for DISMISS.
Upon the foregoing documents and oral argument, Defendants the City of New York (the "City"), the New York City Police Department (the "NYPD"), Michael Melocowsky ("Melocowsky"), Eric Eichenholtz ("Eichenholtz"), and Tanya Meisenholder ("Meisenholder") (collectively identified as "Defendants") move to dismiss Plaintiff's amended complaint pursuant to CPLR § 3211(a)(7) on the grounds that Plaintiff's claims are barred by res judicata and fail to state a cause of action upon which relief may be granted. Plaintiff, Jeffrey Hunold ("Plaintiff") opposes the motion. For the reasons stated herein, Defendants' motion is granted.
BACKGROUND
Plaintiff was a police officer with the NYPD from January 2005 to July 2022 (NYSCEF Doc No. 11, verified amended complaint ¶¶ 1, 14).[FN1]
As a result of the COVID-19 pandemic, on October 20, 2021, the commissioner of the New York City Department of Health and Mental [*2]Hygiene issued an order mandating all city employees, including employees of the NYPD, provide proof of at least one dose of a COVID-19 vaccine by October 29, 2021 (see Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for City Employees and Certain City Contractors [October 20, 2021], available at https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf [last accessed August 12, 2024]). Plaintiff is a Christian who applied on October 27, 2021 for a religious accommodation to be exempt from the COVID-19 vaccine (NYSCEF Doc No. 11, verified amended complaint ¶ 22). The NYPD denied Plaintiff's request on February 15, 2022 (id. ¶¶ 30, 33).[FN2]
As a result of this denial, Plaintiff was forced to apply for vested retirement and was constructively terminated on July 29, 2022 (id. ¶¶ 89, 90).
On October 5, 2022, Plaintiff commenced a special proceeding under Article 78 in Supreme Court, New York County under Index No. 158531/2022, against Respondents the City, the NYPD, Police Benevolent Association of the City of New York, Inc., Eric Adams, and Ashwin Vasan (collectively identified as "Respondents") (Index No. 158531/2022, NYSCEF Doc No. 1, verified petition). Plaintiff alleged that he was forced to apply for vested retirement on July 29, 2022, after his request for a reasonable accommodation from the COVID-19 vaccine was denied (id. ¶¶ 1, 2, 3, 4). Plaintiff sought judgment that the denial of his reasonable accommodation was arbitrary and capricious because it: (i) failed to provide its reasoning, (ii) violated New York City Administrative Code §§ 8-107(3) and (28), (iii) violated its own rules, (iv) imposed an unlawful level of scrutiny, and (v) violated the Free Exercise Clause of the New York State Constitution. Plaintiff wanted the specific remedies of his denial annulled, his reasonable accommodation request granted, and an award of "any monetary damages suffered due to adverse employment action taken against him because of the unlawful denial of his reasonable accommodation request" (id. at 27).
By stipulation dated November 15, 2022, Plaintiff discontinued the petition against the Police Benevolent Association of the City of New York, Inc. (Index No. 158531/2022, NYSCEF Doc No. 23). On November 21, 2022, the City and the NYPD joined issue by service of their answer along with affirmations by Eichenholtz and Ivan Mendez (Index No. 158531/2022, NYSCEF Doc No. 24, 25, 26). While the petition was pending before Justice Judy Kim, Plaintiff commenced a second action on July 7, 2023, in New York Supreme Court, New York County under Index No. 156864/2023 (NYSCEF Doc No. 1, verified complaint). 
By order and decision dated October 10, 2023, Justice Kim denied and dismissed the petition in its entirety, holding that Respondents' denial was not arbitrary or capricious, the form checklist utilized by the NYPD in denying reasonable accommodation requests was sufficient to apprise the applicant of the basis for the determination, and the "assertion that the City's process for resolving requests for accommodations to the vaccine mandate violated the New York City Human Rights Law [was] rejected by the First Department" (Index No. 158531/2022, NYSCEF [*3]Doc No. 33, decision and order Kim, J. at 4, 5).
On March 4, 2024, without leave of court, Plaintiff filed an amended complaint that interposes the following causes of action against Defendants in this action: (i) religious discrimination in violation of New York Executive Law § 296 and New York City Administrative Code § 8-107, (ii) violation of New York City Administrative Code § 8-107(28), (iii) declaratory judgment, (iv) violation of the Free Exercise Clause of the New York Constitution, (v) intentional infliction of emotional distress, (vi) aiding and abetting in violation of New York City Administrative Code § 8-107(6), (vii) breach of contract, (viii) attorney's fees, (ix) violation of the Equal Protection Clause of the New York State Constitution, and (x) disparate treatment and disparate impact under New York City Administrative Codes §§ 8-107(1) and 8-107(17) (NYSCEF Doc No. 11, amended verified complaint). Plaintiff alleges that he sustained damages because of employment discrimination, constitutional violations, breach of contract, and intentional infliction of emotion distress when his request for an accommodation from the COVID-19 vaccine was denied.
On March 26, 2024, in lieu of an answer, Defendants moved to dismiss Plaintiff's amended complaint because it is barred by res judicata and otherwise fails to state a cause of action upon which relief may be granted (NYSCEF Doc No. 15). All parties were present for oral argument before the court on June 25, 2024.
ARGUMENTS OF THE PARTIES
The City argues that Plaintiff's amended complaint must be dismissed on the grounds that the claims are barred by collateral estoppel and the amended complaint fails to state a cause of action upon relief which can be granted. Specifically, the City argues that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel because Plaintiff previously filed a petition under Article 78 arising out of the same transaction and occurrence which was previously decided and dismissed. Additionally, the City argues that the amended complaint must be dismissed against the NYPD because it is not a suable entity pursuant to Chapter 17, Section 396 of the New York City Charter. Lastly, the City argues that Plaintiff's amended complaint fails to state a cause of action because: (i) the City's vaccine requirement was facially neutral and generally applicable, (ii) Plaintiff did not allege facts that show that the vaccine mandate conflicts with a bona fide religious belief, (iii) the City's process for resolving requests complied with the New York City Human Rights Law ("NYCHRL"), (iv) there is no underlying claim for discrimination and Plaintiff did not allege any facts that Defendants were aware of the alleged discrimination and condoned it, (v) Plaintiff did not allege any facts about an employment contract, (vi) Plaintiff did not file a notice of claim regarding intentional infliction of emotional distress and the mandate does not rise to the level of extreme or outrageous conduct, (vii) Plaintiff did not allege any facts regarding disparate treatment or impact, and (viii) the vaccine mandate was rescinded and declaratory judgment cannot be granted.
In opposition, Plaintiff argues that the causes of action brought by the amended complaint were not and could not have been raised in the Article 78 proceeding, that the issues are not the same as those raised in the petition, and Plaintiff was not able to get the full measure of damages in the Article 78 proceeding. Further, Plaintiff reiterates that his amended complaint alleges facts sufficient to state causes of action for unlawful employment discrimination, constitutional violations, breach of contract, and intentional infliction of emotional distress.
DISCUSSION
When considering a motion to dismiss under CPLR § 3211(a)(7), a court must accept the factual allegations of the pleadings as true, affording the non-moving party the benefit of every possible favorable inference and determining "only whether the facts as alleged fit within any cognizable legal theory" (see D.K. Prop., Inc. v Natl. Union Fire Ins. Co. of Pittsburgh, 168 AD3d 505 [1st Dept 2019]; Weil Gotshal & Manges LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267 [1st Dept 2004]). Notwithstanding, "bare legal conclusions and factual claims, which are either inherently incredible or flatly contradicted by documentary evidence are not presumed to be true on a motion to dismiss" (Vig v New York Hairspray Co., 67 AD3d 140, 145 [1st Dept 2009]). A motion to dismiss should therefore be granted unless "from [the pleading's] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (McGill v Parker, 179 AD2d 98, 105 [1st Dept 1992], quoting [Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
As an initial matter, this action must be dismissed against the NYPD because City agencies are not legally cognizable entities and therefore are not proper parties. Pursuant to Chapter 17, Section 396 of the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law" (NY City Charter § 396). There is no exception for the NYPD (McCullough v City of NY, 2022 NY Slip Op 33098[U], *7 [Sup Ct, NY County 2022]). Therefore, the NYPD is not a proper party to the action, and the motion to dismiss the complaint as against it is granted.
A. Res Judicata and Collateral Estoppel
Next, the City moves to dismiss the complaint on the grounds that the claims are barred by the doctrines of res judicata and collateral estoppel. "Conceptually, 'res judicata' is an umbrella term encompassing both claim preclusion and issue preclusion, which are described as two separate aspects of an overarching doctrine" (Rojas v Romanoff, 186 AD3d 103, 107 [1st Dept 2020]). "Claim preclusion, the primary aspect of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties" (Rojas, 186 AD3d at 107). Whereas, issue preclusion, "historically called collateral estoppel, pertains to the bar on relitigating issues that were argued and decided in the first suit" (id.).
New York employs a "transactional approach" to claim preclusion which "prevents relitigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions that either were raised or could have been raised in the prior proceeding" (id. at 108; Thomas v City of New York, 239 AD2d 180, 180 [1st Dept 1997]). Thus, claim preclusion applies to those claims "actually litigated or that could have been litigated, and despite the fact that the claims are based on a different theory or seek a different remedy" (Thomas, 239 AD2d at 180).
Issue preclusion, on the other hand, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action" (Rojas, 186 AD3d at 108; see also 517-525 W. 45 LLC v New York City Dep't of Hous. Pres. & Dev., 225 AD3d 478, 479 [1st Dept 2024] ["Here, although styled as breach of contract claims seeking various categories of relief, at its core, the complaint in this action seeks the identical relief [. . .] that was requested and denied in the dismissed article 78 proceeding"])." "To successfully [*4]invoke this doctrine[:] the issue in the second action must be identical to an issue which was raised, necessarily decided and material in the first action, [and] the party to be precluded must have had a full and fair opportunity to litigate the issue in the earlier action (Kim v Goldberg, Weprin, Finkel, Goldstein, LLP, 120 AD3d 18, 23 [1st Dept 2014]).
Both claim preclusion and issue preclusion require "identity of parties" (Rojas, 186 AD3d at 109). "The same parties means the same adversarial parties" (id. at 108, 109). Whereas "the concept of privity requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty[,]" "the mutuality of interests, and the manner in which the nonparty's interests were represented in the earlier litigation established a functional representation such that the nonparty may be thought to have had a vicarious day in court" (id. at 111-12). "In other words, the doctrine extends to persons who were not parties to the previous action but who were connected with it to such an extent that they are treated as if they were parties" (id.).
The doctrines of claim preclusion and issue preclusion are equally applicable where the prior action was an Article 78 proceeding. "[W]here "an Article 78 determination has been made that an employee is not entitled to reinstatement to a governmental position, such determination is res judicata as to subsequent actions seeking, on different theories, reinstatement or damages for removal from the position" (Thomas, 239 AD2d at 180—81; see also Miller v Livanis, 189 AD3d 446, 447 [1st Dept 2020] [Plaintiff's action barred on the grounds of res judicata where it arose out of the same set of circumstances as his prior CPLR article 78 proceeding]; Brooklyn Welding Corp. v City of New York, 198 AD2d 189, 190 [1st Dept 1993] ["that the res judicata defense relies on a prior article 78 proceeding is of no consequence to its application"]). Similarly, the Appellate Division, First Department, has held that a plaintiff may be collaterally estopped from asserting claims of discrimination under Title VII, New York State Human Rights Law, and New York City Human Rights Law after previously challenging their termination in an Article 78 proceeding based on allegations of discrimination that were identical to those asserted in the plenary action (Rosenthal v Roosevelt Island Operating Corp., 221 AD3d 551, 551—52 [1st Dept 2023]; Simmons-Grant v Quinn Emanuel Urquhart & Sullivan, LLP, 116 AD3d 134, 139—40 [1st Dept 2014] ["As the failure to immediately transfer plaintiff is the sole action or failure to act that comprises the entirety of plaintiff's City HRL retaliation claim in this action, that retaliation claim is herewith dismissed" on collateral estoppel grounds]).
In this instance, Plaintiff's amended complaint is barred by both res judicata and collateral estoppel. At the outset, both the amended complaint and the petition arise from the same series of transactions between the same parties and those in privity.[FN3]
Plaintiff alleges in [*5]both the amended complaint and the petition that he was subjected to unlawful religious discrimination when the NYPD denied his request for a reasonable accommodation from the COVID-19 vaccine, failed to engage in a cooperative dialogue, and constructively terminated him. There is not a single other instance of discrimination that Plaintiff raises in the amended complaint that was not already brought by the petition. It is of no moment that Plaintiff now seeks a different remedy under different theories, namely unlawful discrimination in violation of the New York State Human Rights Law ("NYSHRL") and NYCHRL, violations of the New York State Constitution, declaratory judgment, intentional infliction of emotional distress, and breach of contract (Rosenthal, 221 AD3d at 551—52; Padiyar v Albert Einstein College of Medicine of Yeshiva University, 2009 NY Slip Op 30925[U] at *1 [Sup Ct, NY County 2009]["The actions complained of arose out of the same grievance and set of facts as the earlier determination, and plaintiff cannot now attempt to revive his grievance merely by clothing the circumstances in a new theory" of unlawful discrimination]). Plaintiff's claims that the denial of his reasonable accommodation request, failure to engage in a cooperative dialogue, and constructive termination were discriminatory were already determined on the merits where Plaintiff had a full and fair opportunity to litigate (Barrett v City of New York, 166 AD2d 241, 241 [1st Dept 1990] ["Plaintiff had an opportunity to fully litigate the issue of his discharge in the article 78 proceeding [and] [h]is failure then to raise a claim of discrimination precludes him from doing so now"]). As noted in Justice Kim's decision dismissing the petition, Plaintiff's "assertion that the City's process for resolving requests for accommodations to the vaccine mandate violated the New York City Human Rights Law has also been rejected by the First Department" (Index No. 158531/2022, NYSCEF Doc No. 33, decision and order at 5, Kim. J, citing Marsteller v City of New York, 217 AD3d 543, 545 [1st Dept 2023]).
Furthermore, Plaintiff is collaterally estopped from relitigating the issues of whether the NYPD's denial of his reasonable accommodation request, the failure to engage in a cooperative dialogue, and constructive termination were unlawful religious discrimination. The dispositive factual and legal issues in Plaintiff's amended complaint are identical to the allegations that Plaintiff asserted as the basis for annulling Defendants' determination and were decided against Plaintiff in the prior Article 78 proceeding (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 350 [1999]). The court's finding that "Respondents' did not act arbitrarily or capriciously in denying petitioner's application for a vaccination exemption[,]" "the checklist format utilized by the NYPD is sufficient to apprise an applicant for exemption of the basis for the initial determination[,]" and the "assertion that the City's process for resolving requests for accommodations to the vaccine mandate violated the New York City Human Rights Law has also been rejected by the First Department" precludes Plaintiff from relitigating these issues in this plenary action (NYSCEF Doc No. 33, decision and order Kim, J. at 4, 5).
Plaintiff's arguments that he could not have brought his current causes of action in the Article 78 proceeding and that he was not able to get the full measure of damages are unavailing. First, Plaintiff alleged violations of the Free Exercise Clause of the New York State Constitution and anti-discrimination statutes, and even cited to NYCHRL §§ 8-107(3) and (28) in the petition (Index No. 158531/2022, NYSCEF Doc No. 1, verified petition ¶¶ 55-72, 105-16). Moreover, Plaintiff could have raised his various causes of action "in a hybrid article 78 proceeding arising from the same facts," which have been "previously recognized to be appropriate in certain circumstances" instead of commencing a second action alleging the same facts and issues (517-525 W. 45 LLC, 225 AD3d at 479 479; see also Brooklyn Welding Corp., 198 AD2d at 190 [*6]["Inasmuch as plaintiff's mistake claims arose out of the same events surrounding formation of the contracts, it was incumbent upon it to raise them in the Article 78 proceeding too, rather than take a piecemeal approach with the hope, conscious or not, of getting a second bite at the apple in a different forum"]). Lastly, CPLR § 7806 "authorizes the court in an Article 78 proceeding to grant . . . damages . . . that are incidental to the primary relief sought if, as here, damages are recoverable on the same set of facts" (Keane v New York L. Sch., 186 AD2d 453, 453 [1st Dept 1992]). As such, Plaintiff's amended complaint is res judicata and attempts to relitigate identical issues that were material and already decided.
B. Religious Discrimination
Assuming, arguendo, that Plaintiff's causes of action were not barred by res judicata and collateral estoppel, Plaintiff's claims would still fail. Plaintiff's bare bones complaint relies on legal conclusions that Plaintiff was constructively terminated because of his faith, was entitled to a reasonable accommodation, and that the City's process for handling accommodation requests related to the vaccine mandate violated the NYCHRL.
"The State and City Human Rights Laws proscribe employment discrimination based on, among other grounds, race" (see Syeed v Bloomberg L.P., — NE3d &mdash, 2024 NY Slip Op 01330 [2024], *2, citing Executive Law § 296[1][a]; Administrative Code of City of NY § 8—107[1][a]). To plead a cause of action for employment discrimination under NYSHRL and NYCHRL, Plaintiff must allege that (1) he is a member of a protected class, (2) he was qualified to hold the position, (3) he suffered adverse employment action or was treated differently than other employees, and (4) that the adverse action or differential treatment occurred under circumstances giving rise to an inference of discrimination (Harrington v City of New York, 157 AD3d 582, 584 [1st Dept 2018]; Herrington v Metro-N. Commuter R. Co., 118 AD3d 544, 544 [1st Dept 2014]).[FN4]
Plaintiff's allegation that he was employed by the NYPD for eighteen (18) years without professional penalization or suspension is sufficient to plead that he had an [*7]employment relationship and that he was qualified to hold the position (NYSCEF Doc No. 11, amended verified complaint ¶¶ 14, 15, 17). Plaintiff has also sufficiently pled that he is a member of a protected class and that he was terminated from employment or suffered an adverse employment action (id. ¶¶ 1, 21, 89; see Dall v St. Catherine of Siena Med. Ctr., 966 FSupp 2d 167, 177 [EDNY 2013] [Constructive discharge is considered an adverse employment action]).
However, with respect to the final element, Plaintiff pleads only that "Defendants constructively terminated Plaintiff," "Defendants forced Plaintiff, under duress, to apply for vested retirement," and "Plaintiff's unexpected construction termination was nothing more than a pretext to deny Plaintiff his religious rights in Defendant's Marxist and unethical organization" (id. ¶ 89, 90, 92). Plaintiff does not advance any facts regarding the period after the denial of his reasonable accommodation request and before the constructive termination to show that the termination was discriminatory or an act of retaliation, nor does he allege any remarks or actions by decisionmakers to show discriminatory intent (see Brown v City of New York, 188 AD3d 518, 519 [1st Dept 2020]; Whitfield-Ortiz v Dep't of Educ. of City of New York, 116 AD3d 580, 581 [1st Dept 2014]. In short, there are no factual allegations that support a connection between his religion as a "devout Christian" and his alleged constructive termination (see Askin v Dep't of Educ. of City of New York, 110 AD3d 621, 622 [1st Dept 2013]["Although plaintiff asserts that defendants' actions were motivated by age-related bias, she does not make any concrete factual allegation in support of that claim, other than that she was 54 years old and was treated adversely under the State law"]). Accordingly, Plaintiff has not pleaded facts that show that his termination and/or constructive discharge were motivated by his religion rather than his status as unvaccinated and Plaintiff's legal conclusions are insufficient to state a cause of action under the NYSHRL and the NYCHRL. Thus, Plaintiff's first cause of action is dismissed.
C. Failure to Accommodate
To plead a cause of action for failure to accommodate, a plaintiff must plead facts that, if proven, would demonstrate that the plaintiff is entitled to an accommodation on the basis of a bona fide religious belief, the employer had notice of such belief, the plaintiff was able to perform their job with reasonable accommodation, the accommodation would not cause undue hardship to the employer, and the employer failed to make such accommodation (NY Exec. Law § 296[10]; Administrative Code of City of NY § 8-107[1][a]; see Ashandra v 1199 Seiu Nat. Ben. Fund, 2023 WL 6975971, *1 [Sup Ct, NY County 2023]).
Here, Plaintiff alleges only that he applied for a reasonable accommodation because he is created in God's image and that the accommodation was denied because of undue hardship (NYSCEF Doc No. 11, amended verified complaint ¶¶ 19, 21, 25). Plaintiff does not, however, advance facts that would support a finding that he was able to perform his job as a police officer with reasonable accommodation. Rather, Plaintiff alleges, in a conclusory fashion, that the NYPD's denial was "predetermined because of [Plaintiff's] faith" (id. ¶ 31). Also absent is any factual allegation that the requested accommodation would not impose an undue hardship on the employer (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 834 [2014]["A reasonable accommodation for an employee's impairment is one which permits an employee . . . with a disability to perform in a reasonable manner the activities involved in the job and does not impose an undue hardship on the employer's business"][internal quotations omitted]). Therefore, Plaintiff fails to state a cause of action for failure to accommodate.
[*8]D. Failure to Engage in Cooperative Dialogue
The NYCHRL makes it an "unlawful discriminatory practice for an employer . . . to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation . . . [f]or religious needs" (Administrative Code of City of NY § 8-107[28][a]). Thus, the requirement to engage in a cooperative dialogue is precipitated by the employee's need for a religious accommodation (see Coronado v Weill Cornell Med. Coll., 66 Misc 3d 404, 410 [Sup Ct, NY County 2019] ["Administrative Code § 8-107[28] requires defendants to engage in a cooperative dialogue with plaintiff within a reasonable time after her request for an accommodation"]). In this case, Plaintiff has not alleged facts, beyond bare legal conclusions that the City's process for resolving requests for accommodations to the COVID-19 vaccine fell short of the requirements of the NYCHRL regarding cooperative dialogue. The City's process was found to be rational by the Appellate Division, First Department, and Plaintiff has not alleged any facts that show that his particular circumstances demanded "a more robust or individualized dialogue than the process he received" (Matter of Marstellar v City of New York, 217 AD3d 543 [1st Dept 2023]). Despite alleging that "no one engaged [Plaintiff] in a cooperative dialogue" the record reflects that Plaintiff availed himself of the reasonable accommodation process that was adopted by the City of New York Reasonable Accommodation Appeals Panel (the "Citywide Panel") and was thus engaged in a cooperative dialogue (NYSCEF Doc No. 11, amended verified complaint ¶¶ 26, 32, 55; NYSCEF Doc No. 18, verified petition ¶¶ 22, 36, 37, 38; see also Lynch v Bd. of Educ. of City Sch. Dist. of City of New York, 221 AD3d 456, 458 [1st Dept 2023] ["DOE employees were informed how to apply for religious accommodations and appeal denials, petitioner 'availed h[er]self of this process, the [DOE] explained why h[er] application did not qualify for an accommodation, . . . [and] the parties further engaged in the administrative appeals process,' [. . .] such that petitioner "has not established that, under these circumstances, the City HRL required a more robust or individualized dialogue than the process [s]he received"]). As such, Plaintiff has not stated a cause of action for failure to engage in a cooperative dialogue and Plaintiff's second cause of action is dismissed.
E. Declaratory Judgment
Pursuant to CPLR § 3001, "the supreme court may render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy" (CPLR § 3001). To constitute a justiciable controversy, "there must be a real dispute between adverse parties, involving substantial legal interest for which a declaration of rights will have some practical effect" (Downe v Rothman, 215 AD2d 716, 717 [2d Dept 1995]; Belli v New York City Dep't of Transportation, 200 AD3d 402 [1st Dept 2021]; Touro Coll. v Novus Univ. Corp., 146 AD3d 679, 680 [1st Dept 2017]). Because the COVID-19 vaccine mandate was rescinded in February 2023 by Mayor Eric Adams, there is no present controversy between the parties regarding the requirement to be vaccinated (see New York City Mun. Lab. Comm. v Adams, 222 AD3d 437, 438 [1st Dept 2023]). As such, Plaintiff's third cause of action must be dismissed.
F. Violation of the New York State Constitution
Generally, plaintiffs do not have a private right of action under the State Constitution [*9](Berrio v City of New York, 212 AD3d 569, 569—70 [1st Dept 2023]). A cause of action for violation of the New York State Constitution arises only where it is necessary to ensure full realization of a claimant's constitutional rights (Brown v State of New York, 89 NY2d 172, 186 [1996]; Martinez v City of Schnectady, 97 NY2d 78, 83-84 [2001]). Hence, New York limits recovery for state constitutional violations to circumstances where no alternate remedy is available (Lyles v State, 2 AD3d 694, 695 [2d Dept 2003], affd, 3 NY3d 396 [2004] ["In the present case, the recognition of the claimant's state constitutional claims was neither necessary nor appropriate to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative remedy"]). Where statutory or common law remedies are available to ensure a Plaintiff's constitutional rights, a cause of action under the State Constitution is not necessary or appropriate (Brown, 89 NY2d at 186, supra; Martinez, 97 NY2d at 83-84, supra; Berrio, 212 AD3d at 569—570, supra). In this instance, there are statutory and common law remedies available to Plaintiff, which he pursued in the Article 78 action and recognition of a separate claim under New York State Constitution is neither necessary nor appropriate. Accordingly, Plaintiff's fourth and ninth causes of action are dismissed.
G. Intentional Infliction of Emotional Distress
To plead a cause of action for intentional infliction of emotional distress, Plaintiff must allege facts that demonstrate: "(i) extreme and outrageous conduct, (ii) an intent to cause, or disregard of a substantial probability of causing severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress" (Howell v New York Post Co., 81 NY2d 115, 121 [1993]; Murphy v Am. Home Prod. Corp., 58 NY2d 293, 303 [1983]. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (Chanko v Am. Broad. Companies Inc., 27 NY3d 46, 56—57 [2016]). Plaintiff's allegation that he was denied a religious accommodation are insufficient to satisfy the "exceedingly high legal standard for pleading an [intentional infliction of emotional distress] claim" (Russell v New York Univ., 204 AD3d 577, 581 [1st Dept 2022], affd, No. 37, 2024 WL 1773218 (NY 2024). Nor has Plaintiff alleged any facts that show Defendants forced Plaintiff to "violate the sanctity of his body, his soul, his religion, his creed, and his relationship with God" (NYSCEF Doc No. 11, amended verified complaint ¶ 77) or that he suffered severe emotional distress. Lastly, Plaintiff failed to file a notice of claim for this cause of action, and as such cannot maintain a cause of action for intentional infliction of emotional distress as required by General Municipal Law § 50-I (General Municipal Law § 50-i). Accordingly, Plaintiff's fifth cause of action is dismissed.
H. Aiding and Abetting
Under NYCHRL, "it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so" (Administrative Code of City of NY § 8-107[6]). To state a cause of action for aiding and abetting against Melocowsky, Plaintiff must plead facts sufficient to show that he was aware of the discrimination, and participated or condoned it (Ajoku v New York State Off. of Temp. & Disability Assistance, 198 AD3d 437, 438 [1st Dept 2021]). An individual cannot aid [*10]and abet their own conduct, and without an underlying claim of discrimination, there can be no liability for aiding and abetting (Poolt v Brooks, 38 Misc 3d 1216[A] [Sup Ct, NY County 2013]). Whereas Plaintiff has not stated a viable cause of action for discrimination, his cause of action for aiding and abetting also fails. Accordingly, Plaintiff's sixth cause of action is dismissed.
I. Breach of Contract
Plaintiff's fifth cause of action is styled as a cause of action for "Breach of Contract - Constructive Wrongful Termination" (NYSCEF Doc No. 11, amended verified complaint at 20). To state a claim for breach of contract Plaintiff must allege: (1) the existence of a contract; (2) that Plaintiff performed in accordance with the contract; (3) Defendants' breach of contract; and (4) resultant damages (34-06 73, LLC v Seneca Ins. Co., 39 NY3d 44, 52 [2022]). The essential elements of an employment contract include the identity of the parties and the terms of employment, including the commencement date, the duration of the contract, and the salary (Elite Tech. NY Inc. v Thomas, 70 AD3d 506, 507 [1st Dept 2010]). Plaintiff's complaint alleges that "[p]laintiff was employed by defendant under a contract of employment," that "[d]efendant could only terminate Plaintiff pursuant to terms of that contract," and that "[d]efendant failed to comply with any term or provision of the contract as it relates to [p]laintiff's constructive termination." (NYSCEF Doc No.11, verified complaint ¶¶ 87, 88). Plaintiff alleges further that "[o]n or about July 29, 2022, [d]efendants constructively terminated [p]laintiff despite the absence of any contractual termination event," and that "at no point did [d]efendants follow the law or the contract" (id. ¶¶ 89, 91). Plaintiff does not identify the parties to the purported contract or the terms of his employment, including when the employment contract commenced, the contract's duration, or Plaintiff's compensation. This is insufficient to plead a cause of action for breach of contract. The bald allegations are also insufficient to state a cause of action for constructive termination, which requires an allegation that the employer "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign" (Mascola v City Univ. of New York, 14 AD3d 409, 410 [1st Dept 2005]). Accordingly, Plaintiff's fifth cause of action is dismissed.
J. Attorney's Fees
Although a Plaintiff may be awarded attorney's fees under NYSHRL and NYCHRL, a claim for attorney's fees may not be maintained as a separate cause of action (La Porta v Alacra, Inc., 142 AD3d 851, 853 [1st Dept 2016]); Pier 59 Studios L.P. v Chelsea Piers L.P., 27 AD3d 217 [1st Dept 2006]). Therefore, Plaintiff's seventh cause of action must be dismissed.
K. Disparate Treatment and Disparate Impact
Disparate treatment is not a separate cause of action but a theory of unlawful employment discrimination (Etienne v MTA New York City Transit Auth., 223 AD3d 612, 612—13 [1st Dept 2024]; see also Golston-Green v City of New York, 184 AD3d 24, 29 [2d Dept 2020]["The complaint alleged discrimination under theories of a hostile work environment, disparate treatment, and constructive discharge"]). Plaintiff's cause of action for disparate treatment fails because Plaintiff did not allege facts that show he was treated differently than [*11]others similarly situated, and Plaintiff failed to allege facts that show his religion was a motivating factor in his constructive termination (see section I[B], infra; see also Etienne v MTA New York City Transit Auth., 223 AD3d 612, 612—13 [1st Dept 2024] ["Plaintiff failed to demonstrate that she and her colleague were similarly situated in all material respects" because "there were no allegations that she had the same job title as plaintiff, had the same responsibilities or job requirements as plaintiff, reported to the same supervisors, or that she was even employed in the same unit as plaintiff"]).
Plaintiff also fails to plead a cause of action for disparate impact. To plead a cause of action for disparate impact, a plaintiff must allege "that a policy or practice [. . .] results in a disparate impact to the detriment of any protected group" (Administrative Code of City of NY § 8-107[17]; Levin v Yeshiva Univ., 96 NY2d 484, 492—93 [2001]). Thus, a plaintiff must: "(i) identify a specific employment practice or policy, (ii) demonstrate that a disparity exists; and (iii) establish a causal relationship between the two" (Cannizzaro v City of New York, 82 Misc 3d 563, 579 (Sup Ct, NY County 2023). "Plaintiffs often rely on statistical evidence to show a disparity in outcome between groups and the statistics must plausibly suggest that the challenged practice actually has a disparate impact" (id.). "A plaintiff's statistical analysis must [demonstrate] that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity" (id.). "The statistical analysis must therefore, at minimum, focus on the disparity between appropriate comparator groups or reveal disparities that are relevant to the claim plaintiff seeks to prove" (id.).
Here, Plaintiff alleges that "Defendants created a discriminatory system which intentionally used the wrong legal standard as to fire as many Christians as possible" and "[t]his system was implemented to favor the elimination of all Christians who placed more trust in their God compared to those who adhered to different belief systems, including secular perspectives" (NYSCEF Doc No. 11, amended verified complaint ¶ 110). Plaintiff goes on to allege that "Defendants' policies and practices are not general laws as they specifically target Christians who share Plaintiff's sincerely held views about his God but leave untouched other employees with other religious beliefs or worship at the secular altar of atheism" (id. ¶ 113). Further, Plaintiff alleges that "Defendants created a new and separate accommodation policy specifically addressing religious employees in relation to the COVID-19 vaccine[,]" "maintained separate records for religious beliefs and accommodation requests[,]" and "denied accommodation requests at substantially different rates compared to regular numbers" (id. ¶¶ 116, 117).
These broad-based conclusory allegations are not supported by any facts that show that Christians, as compared to any other faith or creed, were disproportionately impacted by the vaccine mandate or the reasonable accommodation request process (Samuels v William Morris Agency, 123 AD3d 472, 473 [1st Dept 2014] ["The complaint fails to allege discrimination under a disparate impact theory because it fails to allege any facts showing that defendants' policy falls more harshly on black screenwriter applicants than other groups"]). Similarly, beyond conclusory allegations about "secular perspectives" and "atheism," Plaintiff fails to allege facts that show which creed, if any, was benefitted by the neutral policy at issue (Levin, 96 NY2d at 493 ["Excluding a large portion of the class benefitted by this policy from the disparate impact comparison group would render the disparate impact analysis articulated in Griggs, 401 US 424, supra meaningless"]). Plaintiff's reliance on a report by Charles Baum does nothing to further Plaintiff's allegations. The report does not reference Christians, or any religion for that matter, [*12]and therefore completely fails to demonstrate any disproportionality on behalf of any creed (NYSCEF Doc No. 29). As such, Plaintiff fails to show that any particular creed was disparately impacted or that there was a causal connection between the policy and the impacted creed. To the extent that the report shows that the NYPD denied more requests in 2021 than any other year before, it also shows that the NYPD received more requests in 2021 than any other year. Further, the report shows that the NYPD approved requests during this period, and it could be members of the Christian faith who received such approval. Ultimately, without any information regarding the faith attached to each request, approval, and denial, there is simply no disproportionate impact to be gleaned, and Plaintiff fails to allege any facts to support his conclusory allegations that Christians were disparately impacted.
Lastly, Plaintiff's allegations that the City created a separate process to handle COVID-19 requests and maintained a sperate repository for these requests does not demonstrate that members of the Christian faith were disproportionately affected (Matter of Marstellar v City of New York, 217 AD3d 543 [1st Dept 2023]; Samuels v William Morris Agency, 123 AD3d 472, 473 [1st Dept 2014]). Thus, Plaintiff's tenth cause of action is dismissed.
Accordingly, it is hereby
ORDERED that the Defendants' motion to dismiss this action is granted and the complaint is dismissed with prejudice; and it is further
ORDERED that the Clerk is directed to enter judgment in favor of Defendants dismissing this action, together with costs and disbursements to defendant the City of New York, as taxed by the Clerk upon presentation of a bill of costs.
This constitutes the decision and order of the court.
DATE 9/10/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Except where otherwise noted, the facts are recited here as alleged in the amended complaint and are accepted as true for the purpose of the motion, as required on a motion to dismiss.

Footnote 2:Plaintiff's memorandum of law in support of his opposition to Defendants' motion alleges that Plaintiff's reasonable accommodation was denied on June 17, 2022, that he was notified that he would be placed on leave without pay on June 24, 2022, and his employment was terminated on June 27, 2022 (NYSCEF Doc No. 23, memorandum of law at 2). These dates are different from those alleged in the amended complaint and will not be considered for the purposes of this motion.

Footnote 3:Plaintiff sued the City and the NYPD in both the amended complaint and the petition. Melocowsky Eichenholtz, and Meisenholder are in privity with the City because all parties are "necessarily interested in obtaining a favorable outcome in all claims or proceedings" regarding implementation of the COVID-19 vaccine mandate (Rojas, 186 AD3d at 112). Melocowsky's alleged actions were also the subject of the petition such that his interests were represented by the City (Buechel v Bain, 97 NY2d 295, 304—05 ([2001]). Moreover, the City at least initially determined that Melocowsky, Eichenholtz, and Meisenholder were acting within the scope of their employment because they are represented by Corporation Counsel pursuant to General Municipal Law § 50-k.

Footnote 4:In 2019, the NYSHRL was amended to align the language and purpose of the statute with the language and purpose of the NYCHRL. With the amendments, both the City and State Human Rights Law must be liberally construed to accomplish the remedial purposes that they serve (Syeed, 2024 NY Slip Op 01330 [2024] at *2). These amendments are applicable to Plaintiff's claims as they accrued after the amendments were adopted. "Exceptions and exemptions to both statues shall be construed narrowly in order to maximize deterrence of discriminatory conduct," and courts must "construe the Human Rights Laws broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (id. [internal quotes and citations omitted]). Although post-amendment case law is limited, courts interpreting discrimination claims under the NYSHRL have begun to turn to interpretations of the NYCHRL for guidance (see Cannizzaro v. City of New York, 82 Misc 3d 563, 577 [Sup Ct, NY County 2023]; Brown v New York City Dept. of Educ., 2023 NY Slip Op 30106[U], *8, [Sup Ct, NY County 2023]). "As the amended NYSHRL adopts the same standard as the NYCHRL, the plaintiff's 'NYSHRL claims rise and fall with [the] NYCHRL claims'" (Cannizzaro, 82 Misc 3d at 578, citing Syeed v Bloomberg L.P., 568 FSupp3d 314, 321 [SDNY 2021]).